*216 The opinion of the Court was delivered by
Glover, J.
This was a'n action on the case for a false representation. The second count, on which alone the plaintiff relies, alleges, “ That the said Philip, falsely, maliciously and deceitfully represented to the said Joseph, that he the said Philip would sell, convey and deliver to him, the said Joseph, for the sum of $4,500, a certain plantation belonging to him, the said Philip.” “ And the said Philip, by a verbal contract, falsely, maliciously and deceitfully, and with the intent to injure and defraud the said Joseph, engaged with the said Joseph to sell, convey and deliver to the said Joseph the plantation aforesaid, so soon as the said Joseph could return to Beaufort and remove his family, and negroes, and stock to the said plantation, the purchase money for the said plantation agreed upon between the vendor and vendee being $4,500; and the said Joseph avers, that the said Philip, his said promise and undertaking so by him deceitfully, falsely and maliciously, and with the design to injure him the said Joseph, entered into, refused to comply with the contract of sale as above set forth, and would not nor has to this time executed title deeds to the said Joseph for the said plantation,” &c. The plaintiff also avers that the defendant had refused to put him into the full possession of the said plantation, and that he afterwards compelled the plaintiff to depart from the premises, &c.
The proof was, that in the latter part of January, 1854, the defendant addressed a letter to the plaintiff stating, “ that the price of the land would depend on the terms and, therefore, that he must come to Charleston to see him.” The next day the plaintiff went to Charleston, but it did not appear that there was any meeting between the parties. He returned and immediately went to'Prince William’s Parish, Beaufort district, where he resided, and, about the middle of February, sent his wagon, negroes, cattle and hogs to the defendant’s plantation, on Ashley river, about fifteen miles from Charleston. At this time a sale of furniture was advertised at defendant’s planta *217 tion, where his son and family lived. On the 24th or 25th of February the sale took place, and the defendant was there, who said, that he was sorry the plaintiff was not present as he wished the titles filled up, and that the plaintiff must come to Charleston. The plaintiff’s negroes were then on the plantation, cutting weeds and clearing fields, and defendant said he could go on and tend what fields he wished. Two or three days after the plaintiff arrived with his family, and continued on the plantation about a week when he left it and removed his property. On the plaintiff’s arrival with his wagon, defendant’s son asked him to stay, but considered him a guest, and the keys were refused. After the plaintiff had removed from Prince William’s, be agreed to meet the defendant at an attorney’s office, in Charleston, to complete the contract, and a conference was there had between the plaintiff and the defendant’s son, who was authorised to give possession if the terms of sale were complied with. They could not agree respecting the security to be given for the purchase money, and the negotiation for a sale ceased. It was after this that plaintiff removed his property from defendant’s plantation. Defendant’s son stated to plaintiff’s agent, that'plaintiff should not have moved before he had made arrangements respecting the purchase. To I. M. Dwight the defendant admitted the sale at $4,500, with three or four instalments, and no cash until January. Defendant expressed anxiety about giving up the plantation before arrangements were made, and seemed anxious also about the security. Some weeks after, Dwight wrote to the defendant, that plaintiff would offer such security as defendant would not object to. Defendant replied, that the house must be insured and the policy assigned, which terms" were different from the ones before stated by the defendant. This was not communicated to the plaintiff.
The. plaintiff having closed, on motion of the defendant’s counsel a nonsuit was ordered on the ground that damages could not be recovered for the breach of the contract alleged, *218 and that the evidence had failed to make such a ease of false representation as will sustain an action for deceit.
The plaintiff now moves to set aside the nonsuit on the following grounds:
1. Because there was proof of a parol agreement for the sale of the land and delivery of the premises by the defendant, and his refusal to complete the contract was a fraud in law, whatever were his motives.
2. Because the injury having been clearly established, the Court should have left it to the jury to decide whether or not the defendant’s conduct was false and' fraudulent.
8. Because the defendant’s conduct was calculated to deceive and injure the plaintiff and he was thereby deceived and injured.
4. Because it is submitted, that fraud and injury were clearly established and these are sufficient to sustain this action.
5. Because on the law and evidence, the nonsuit should not have been granted.
6. Because the defendant’s letter to Isaac M. Dwight was a sufficient memorandum of the sale to satisfy the statute of frauds.
It is not very clear whether the action is in assumpsit to recover damages for the breach of defendant’s contract, or if it is framed in tort for a misrepresentation. The plaintiff’s right to maintain the action in either form has been insisted upon. A parol contract for the sale of land is within the 4th section of the Statute of Frauds, and it would'be but an evasion of this provision of the statute if damages may be recovered for the breach *219 of such a contract. The correspondence between I. M. Dwight and the defendant was not at the instance nor with the knowledge of the plaintiff, but was the voluntary act of Dwight, and it is neither an agreement, memorandum or note in writing which satisfies the statute. In the negotiation pending, Dwight was not the legally authorized agent of either party, nor was the letter of the defendant addressed to him, the evidence in writing of any settled agreement respecting a sale of the plantation. Failing in this view, it has been urged that the plaintiff’s possession was in part performance of the contract, and that such a case is not embraced within the statute. Courts of Equity have decreed the specific performance of a contract partly executed, but this is strictly ah equitable doctrine, and we are not prepared to say that a party may recover damages for the breach of every contract which a Court of Equity would specifically enforce. The construction of the statute, and what within the legal intent of it, will amount to a signing are questions in equity and at law; (18 Ves. 183) but where an agreement has been partly carried into execution the better opinion is, that relief is. limited to the Court of Equity. Cooth vs. Jackson, 6 Ves. 12.
There was, however, no act done in pursuance and in execution of any agreement of the parties to this suit which, even in Equity, would be considered a performance in part. Before the terms of the contract had been settled the plaintiff moved, and his temporary residence, as a guest, cannot be construed into a delivery of possession, which the defendant’s son was authorised to give only when the terms were complied with. Although the Court in Cosack vs. Descoudres & Crovat, 1 McC. 425, refers to the payment of a substantial part of the purchase money as a circumstance entitled to consideration ; yet there was a writing executed- by the defendants, and the case was decided on that ground. The plaintiff must disclose a valid contract before he can recover damages for the breach of it.
Admitting that the action has been properly framed in case *220 a false representation which occasions damages to the plaintiff must be alleged' and proved. Most of the cases falling within this principle have been of misrepresentation relative to the ability and credit of a person and depend on the authority of Passley vs. Freeman, 3 T. R. 53; referred to in the argument. Actions on the case may be sustained against the vendor of real estate, although he is bound by covenants of warranty; as where defendant sold, for valuable consideration, land which had no existence, it was held that the purchaser so defrauded may treat the deed as a nullity, and recover for the deceit, (Wardell vs. Fosdick & Davis, 13 John. 325.) So too in fraudulent representation of boundaries in a deed, (Munroe vs. Pritchett, 16 Ala. R. 785.) Or where goods are sold over which the vendor had no control. Show. 68. Or where a broker sells property knowing it to be subject to the lien of a fi. fa. and conceals the fact. Chisolm vs. Gadsden, 1 Strob. 220. In all these cases the right to recover is put on the ground, that in a sale of property damages have resulted from false representations by which the purchaser has been misled.
. In the principal case there was no valid sale nor memorandum in writing, binding the defendant, Moore, to a specific performance of his contract, and, consequently there could be no breach of warranty, nor such misrepresentation as deceived the plaintiff. The false representation alleged in the second count is, that the defendant deceitfully represented he would sell, &c., and that, by a verbal contract he engaged to sell, &c., the plantation.
If Moore, at the time, did not intend to perform his agreement, the case is within the principle of Gallager & Mason vs. Brunel, 6 Cowen, 346. In that case the plaintiffs having sold to third persons on the defendant’s promise to endorse the. notes of the vendees and, afterwards, having failed to do so, it was held, that an action on the case was inapplicable and that the promise must be sued upon ; and that such an attempt was, by changing the character of the action, to evade the *221 statute of frauds. The -plaintiff affirms only a future parol promise to sell and convey, and Moore’s failure’to comply, and this, if established by proof, will not sustain his action. A verbal promise to convey real estate in future, although at the time not intended to be performed, cannot be made the subject of an action on the case* for deceit.
The parties were negotiating for a sale until their final meeting at an attorney’s office in Charleston; and before the terms were definitely settled, the plaintiff cannot complain that his confidence was abused. Prudence would have dictated that before he abandoned one plantation he should have completed the purchase of another. The proof does not show a design on the part of Moore, by fraud or falsehood, to injure the plaintiff, and his conduct does not appear to be inconsistent with fair dealing.
The motion to set aside the nonsuit is refused.
Motion dismissed.
O’Neall, Wardlaw, Withers, Whitner, and Munro, JJ.,. concurred.-

Motion dismissed.